IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 2:15-cr-1032 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RANDY JOE METCALF, | ) | DEFENDANT'S BRIEF IN SUPPORT |
| | ) | OF MOTION TO DISMISS INDICTMENT |
| Defendant. | ) | |

Randy Metcalf, through counsel, now submits the following Brief in Support of his Motion to Dismiss the Indictment.

## INTRODUCTION

On December 15, 2015, the grand jury returned an indictment charging Metcalf with one count of violating 18 U.S.C. § 249(a)(1), alleging that he "willfully caused bodily injury to L.S., who is African American, because of L.S.'s actual or perceived race, color, and national origin." Metcalf submits that the portion of the Hate Crimes Act under which he is charged, § 249(a)(1), is an invalid exercise of Congress's power to enforce the Thirteenth Amendment, and therefore unconstitutional. Pursuant to Federal Rule of Criminal Procedure 12(b), the district court should grant his motion to dismiss the indictment.

1

# ARGUMENT

I. **SECTION 249(a)(1) OF THE HATE CRIMES ACT IS UNCONSTITUTIONAL BECAUSE IT IS AN INVALID EXERCISE OF CONGRESS'S LAWMAKING AUTHORITY.**

   a. **History of the Hate Crimes Act**

In 2009, Congress enacted the Hate Crimes Act, 18 U.S.C. § 249. Section 249(a)(1) states:

> **(1) Offenses involving actual or perceived race, color, religion, or national origin.**—Whoever, whether or not acting under color of law, willfully causes bodily injury to any person or, through the use of fire, a firearm, a dangerous weapon, or an explosive or incendiary device, attempts to cause bodily injury to any person, because of the actual or perceived race, color, religion, or national origin of any person.

In passing §249(a)(1), Congress expressly relied on the Thirteenth Amendment as authority. *United States v. Cannon*, 750 F.3d 492, 497-98 (5th Cir. 2014). "Section 249(a)(1) is distinct from the second part of the Shepard-Byrd Act, which applies to other categories of hate crimes and rests on different constitutional sources of congressional authority." *Id.* While "Congress passed § 249(a)(2) under § 5 of the Fourteenth Amendment and the Commerce Clause," the same is not true for § 249(a)(1). *Id.* "In contrast, § 249(a)(1) rests solely on Congress's authority under § 2 of the Thirteenth Amendment." *Id.*

The Thirteenth Amendment states:

> **Section 1.** Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.

> **Section 2.** Congress shall have power to enforce this article by appropriate legislation.

2

### b. Section 249(a)(1) is not a valid exercise of § 2 of the Thirteenth Amendment.

The U.S. Supreme Court's interpretation of the scope of § 2 of the Thirteenth Amendment—the enforcement provision—has changed over time. The Court first analyzed § 2 in the *The Civil Rights Cases (United States v. Stanley, et al.)*, 109 U.S. 3, 20 (1883). The Court stated:

> It is true that slavery cannot exist without law any more than property in lands and goods can exist without law, and therefore the Thirteenth Amendment may be regarded as nullifying all State laws which establish or uphold slavery. But it has a reflex character also, establishing and decreeing universal civil and political freedom throughout the United States; and it is assumed that the power vested in Congress to enforce the article by appropriate legislation, clothes Congress with power to pass all laws necessary and proper for abolishing *all badges and incidents of slavery* in the United State[s] . . . .

109 U.S. 3, 20 (1883) (emphasis added). The Court then rejected the argument that Congress could rely on § 2 of the Thirteenth Amendment to outlaw discrimination in public accommodations. *Id.* In doing so, the Court reasoned that discrimination in public accommodations had "nothing to do with slavery or involuntary servitude." *Id.* at 24.

Consistent with the *The Civil Rights Cases*, in *Hodges v. United States*, 203 U.S. 1, 27 (1906), the U.S. Supreme Court determined that the scope of the enforcement provision was "as clear as language can make it. The things denounced are slavery and involuntary servitude, and Congress is given power to enforce that denunciation. All understood by these terms a condition of enforced compulsory service of one to another." *Id.* at 16.

However, the U.S. Supreme Court's interpretation of breadth of § 2 of the Thirteenth Amendment changed in *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409 (1968). *See Cannon*, 750 F.3d at 499-500 (discussing the U.S. Supreme Court's change in analysis). In *Jones*, the Court relied on the "badges and incidents of slavery" language from the *The Civil Rights Cases* and

3

held that Congress had the authority to abolish the "badges and incidents of slavery." *Id.* at 440. However, the Court went further, and determined Congress also had the power to "rationally determine" what *are* the badges and incidents of slavery. *Id.*

After *Jones*, the U.S. Supreme Court has pulled back on Congress's power to legislate under the other "Reconstruction Amendments," specifically the Fourteenth and Fifteenth Amendments. First, in *City of Boerne v. Flores*, 521 U.S. 507, 517 (1997), the Court interpreted the scope of Congress's enforcement powers under § 5 of the Fourteenth Amendment, which is almost identical to § 2 of the Thirteenth Amendment. First, the Court determined that the enforcement provision was clearly only remedial. *Id.* at 528. The Court stated:

> If Congress could define its own powers by altering the Fourteenth Amendment's meaning, no longer would the Constitution be "superior paramount law, unchangeable by ordinary means." It would be "on a level with ordinary legislative acts, and, like other acts, . . . alterable when the legislature shall please to alter it." Under this approach, it is difficult to conceive of a principle that would limit congressional power.

*Id.* at 529 (quoting *Marbury v. Madison*, 5 U.S. 137 (1803)). This directly conflicts with *Jones's* holding that Congress can determine what are the badges and incidents of slavery—essentially allowing it to define its own power—and legislate accordingly.

More recently, the Court decided *Shelby County v. Holder*, 133 S.Ct. 2612 (2013). *Shelby County* involved various challenges to the Voting Rights Act of 1965, and required the Court to analyze the scope of the enforcement provision of the Fifteenth Amendment (which again, is almost identical to § 2 of the Thirteenth Amendment). *Id.* at 2625-31. The Court held that to justify use of the enforcement provision of the Fifteenth Amendment, any legislation must be based on current, not past, conditions. *Id.* The Court stated:

> Congress may draft another formula based on current conditions. Such a formula is an initial prerequisite to a determination that exceptional conditions still exist

> justifying such an extraordinary departure from the traditional course of relations between the States and the Federal Government. Our country has changed, and while any racial discrimination in voting is too much, Congress must ensure that the legislation it passes to remedy that problem speaks to current conditions.

*Id.* at 2631 (internal quotation marks omitted).

Circuits to decide the issue have upheld constitutional challenges to § 249(a)(1), finding that *Jones* is binding precedent despite *Flores* and *Shelby County*. *Cannon*, 750 F.3d 492; *United States v. Hatch*, 722 F.3d 1193 (10th Cir. 2013).[1] However, the Eighth Circuit has not decided the constitutionality of § 249(a)(1) as posed by Metcalf in this motion. The closest the Circuit came to analyzing a constitutional challenge to § 249(a)(1) was *United States v. Maybee*, 687 F.3d 1026 (8th Cir. 2012). In *Maybee*, a defendant raised a "narrow challenge" to § 249(a)(1). The defendant recognized that in *United States v. Bledsoe*, 728 F.2d 1094 (8th Cir. 1984), the Eighth Circuit upheld 18 U.S.C. § 245(b)(2)(B), a similar statute to § 249(a)(1), as an appropriate exercise of Congress's Thirteenth Amendment enforcement power. *Id.* at 1031. However, the defendant argued that this case "relied on two statutory elements—that the willful infliction of injury be motivated by the victim's race and by the victim's enjoyment of a public benefit" and held that these elements "are *necessary* to justify the exercise of Congress's Thirteenth Amendment enforcement power." *Id.* Because § 249(a)(1) does not include these elements, the defendant argued § 249(a)(1) is unconstitutional. *Id.*

The Eighth Circuit rejected this argument on error preservation grounds because the defendant failed to provide any substantive argument:

> While Maybee argues that § 249(a)(1) renders it constitutionally sweeps more broadly than § 245(b)(2)(b), he provides no substantial argument as to why the particular scope of § 249(a)(1) renders it constitutionally infirm. *See United*

---

[1] *Hatch* does not discuss *Shelby County*.

*States v. Stanko*, 491 F.3d 408, 415 (8th Cir. 2007) (refusing to address issues not substantively argued by a defendant).

Therefore, whether § 249(a)(1) is a valid exercise of Congress's Thirteenth Amendment enforcement power is an open question in the Eighth Circuit.

Without binding precedent from the Eighth Circuit, Metcalf asserts this Court should reject the holdings of the circuits to uphold § 249(a)(1). These cases erroneously determine that *Jones* is still good law.[2] First, *Flores* has overruled *Jones*, which allowed Congress to unilaterally determine the scope of § 2 of the Thirteenth Amendment and legislate as it saw fit. Although *Flores* does not explicitly discuss the Thirteenth Amendment or *Jones*, it clearly pulls back on the scope of the enforcement provision under an almost identical statute section. After *Flores*, Congress's power under § 2 of the Thirteenth Amendment is limited to adopting legislation to prohibit slavery and involuntary servitude. Section 249(a)(1) goes beyond this power.

Second, *Shelby County* requires current findings that §249(a)(1) is necessary to enforce the Thirteenth Amendment. Congress did not present *current* findings that § 249(a)(1) is necessary to enforce the Thirteenth Amendment. "In passing §249(a)(1), Congress focused on past conditions and did not make any findings that current state laws, or the individuals charged with enforcing them, were failing to adequately protect victims from racially-motivated crimes." *Cannon*, 750 F.3d at 510 (Elrod, J. , concurring).

While these cases are not explicitly interpreting the Thirteenth Amendment, their analysis still applies to the amendment. The Reconstruction Amendments all "disclose a unity in

---

[2] Other recent U.S. Supreme Court cases, including but not limited to *United States v. Morrison*, 529 U.S. 598 (2000) and *United States v. Lopez*, 514 U.S. 549 (1995), also support that *Jones* is no longer good law.

6

purpose, when taken in connection with the history of the times, which cannot fail to have an important bearing on any question of doubt concerning their true meaning." *Id.* at 509 (Elrod, J. concurring). If this Court does not determine that *Jones* has been overruled, Metcalf asserts that it should be overruled.[3]

Even the circuits to uphold the statute under constitutional attack note the weakness of the argument that Congress had the authority to pass § 249(a)(1) under the Thirteenth Amendment. For example, in response to the defendant's arguments that *Jones's* interpretation of the Thirteenth Amendment violated basic federalism principles, the Tenth Circuit stated:

> At its core, [the defendant's] argument raises important concerns we share. "Badges and incidents of slavery," taken at face value, puts emphasis solely on the conduct Congress seeks to prohibit, and it seems to place few limits on what that conduct might be. Given slaves' intensely deplorable treatment and slavery's lasting effects, nearly every hurtful thing one human could do to another and nearly every disadvantaged state of being might be analogized to slavery—and thereby labeled a badge or incident of slavery under *Jones's* rational determination test. In effect, this interpretation gives Congress the power to define the meaning of the Constitution—a rare power indeed. *See City of Boerne*, 521 U.S. at 529, 117 S.Ct. 2157. And many legal scholars have encouraged broad use of Section 2 power in essentially this way, which would arguably raise the sort of federalism concerns articulated in *City of Boerne*, *Lopez*, and *Morrison*. Others have argued for a narrower interpretation that relates more directly to slavery as an institution rather than to any individual feature of slavery.
>
> While this debate raises worthwhile questions, the Supreme Court has never revisited the rational determination test it established in *Jones*.

*Hatch*, 722 F.3d at 1204.

Additionally, the majority opinion in *Cannon* recognized that the "legal landscape of the Reconstruction Amendments" has changed since *Jones*. 750 F.3d at 505. The concurring opinion went farther, noting the strength of the argument that *Jones's* expansive view of § 2 of the Thirteenth Amendment may no longer be good law. *Id.* at 510 (Elrod, J. , concurring) ("I

---
[3] Metcalf makes this argument for error preservation purposes.

write separately to express my concern that there is a growing tension between the Supreme Court's precedent regarding the scope of Congress's power under § 2 of the Thirteenth Amendment and the Supreme Court's subsequent decisions regarding the other Reconstruction Amendments and the Commerce Clause."). The concurrence recognized *Jones's* holding that Congress can determine the badges and incidents of slavery is inconsistent with later U.S. Supreme Court case law. *Id.* at 511-12 (Elrod, J. , concurring) ("Under our existing Thirteenth Amendment jurisprudence, it has indeed become difficult to conceive of a principle that would limit congressional power."). Additionally, the concurrence noted that because the Hate Crimes Act "'imposes current burdens,' perhaps, like the Voting Rights Act, it too 'must be justified' with congressional findings regarding 'current needs.'" *Id.* at 511 (Elrod, J. , concurring) (quoting *Shelby Cnty*, 133 S.Ct. at 2619)).

Even if *Jones* is still good law, § 249(a)(1) is not a badge and incident of slavery and therefore not a valid exercise of the Thirteenth Amendment. A hate crime is not a badge or incident of slavery as contemplated by the Thirteenth Amendment, because the focus of the Amendment, beyond ending slavery and involuntary servitude, was economic rights of former slaves. *See Pollock v. Williams*, 322 U.S. 4, 17 (1944) ("The undoubted aim of the Thirteenth Amendment as implemented by the Antipeonage Act was not merely to end slavery but to maintain a system of completely free and voluntary labor throughout the United States."). Section 249(a)(1) is also not written so as to limit protections to those individuals previously subject to slavery in the United States, specifically African-Americans. Under this statute, an African American individual can be convicted for an offense against a Caucasian individual.

In short, "[e]very law enacted by Congress must be based on one or more of its powers enumerated in the Constitution. The powers of the legislature are defined and limited; and that

8

those limits may not be mistaken, or forgotten, the constitution is written." *Marbury v. Madison*, 1 Cranch 137, 176, 2 L.Ed. 60 (1803) (Marshall, C.J.)."   Because the Thirteenth Amendment does not provide Congress with authority to pass §249(a)(1), the statute is unconstitutional and the indictment should be dismissed.

### c. Section 249(a)(1) is an impermissible attempt to exercise police power and violates fundamental principles of federalism.

"For nearly two centuries it has been 'clear' that, lacking a police power, 'Congress cannot punish felonies generally.'" *Bond v. United States*, 134 S. Ct. 2077, 2086 (2014) (quoting *Cohens v. Virginia*, 6 Wheat. 264, 428, 5 L.Ed. 257 (1821)).  "Congress does not normally intrude upon the police power of the States." *Id.*  "'When Congress criminalizes conduct already denounced as criminal by the States, it effects a change in the sensitive relation between federal and state criminal jurisdiction.'" *United States v. Lopez*, 514 U.S. 549, 561 n.3 (1995) (quoting *United States v. Emmons*, 410 U.S. 396, 411-12 (1973)).  Federal encroachment on a state's police power implicates the fundamental principles of the Tenth Amendment.  *United States v. Tom*, 565 F.3d 497, 506-07 (8th Cir. 2009).  The U.S. Supreme Court has recently reaffirmed this principle, and rejected Congress's attempts to impose a federal police power in *United States v. Morrison*, 529 U.S. 598 (2000) and *United States v. Lopez*, 514 U.S. 549 (1995).

A review of the legislative history of § 249(a)(1) makes clear that Congress is attempting to use a police power and infringe on a power reserved to the states.  As then Deputy Attorney General Eric Holder testified, "Where State and local prosecutors fail to bring appropriate State charges, or where State laws or State prosecutions are inadequate to vindicate the Federal interest, it is imperative that the Federal Government be able to step in and bring effective Federal prosecutions to 'backstop' State and local law enforcement."  H.R. Rep. No. 111-86, pt.

9

1 at 8 (2009), *available at* https://www.congress.gov/congressional-report/111th-congress/house-report/86/1. Congress cannot create a police power simply because it has issues with how the states are using that power.

Further, a main motivation for passing § 249(a)(1) was to avoid a federal nexus requirement. Congress was frustrated with the "limited reach of section 245(b)" which requires that a victim be engaged in a "federally protected activity." H.R. Rep. No. 111-86, pt. 1 at 7 (2009). Congress noted that this made the statute difficult to prosecute. *Id.* Therefore, § 249(a)(1) removes the requirement of a federal nexus in order to make prosecution in federal court easier. This is improper. Based on these federalism concerns, Congress's authority to define badges and incidents of slavery has narrowed, and §249(a)(1) is unconstitutional.

## CONCLUSION

For the reasons stated in this Brief in Support of Motion to Dismiss Indictment, Mr. Metcalf respectfully moves to dismiss the one-count indictment currently pending against him.

Respectfully Submitted,

/s/ *Melanie S. Keiper*
MELANIE S. KEIPER
Assistant Federal Public Defender
FEDERAL DEFENDER'S OFFICE
400 Locust Street, Suite 340
Des Moines, Iowa 50309-2353
Phone: (515) 309-9610 Fax: (515) 309-9625
Email: melanie_keiper@fd.org
ATTORNEY FOR DEFENDANT,
RANDY JOE METCALF

10

CERTIFICATE OF SERVICE

       I hereby certify that on January 14, 2016, I electronically filed this document with the Clerk of Court using the ECF system which will serve it on the appropriate parties.

                                                */s/ Morgan Conn*, Paralegal