**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 15-CR-1032-LRR |
| vs. | **ORDER** |
| RANDY JOE METCALF, | |
| Defendant. | |

*TABLE OF CONTENTS*

*I.    INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

*II.   RELEVANT PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . *1*

*III.  ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

      *A.   Jones v. Alfred H. Mayer Co.* . . . . . . . . . . . . . . . . . . . . . *4*
      *B.   Rational Determination Analysis* . . . . . . . . . . . . . . . . . . . . *6*
      *C.   Tenth Amendment* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *9*

*IV.   CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *10*

## *I. INTRODUCTION*

The matter before the court is Defendant Randy Joe Metcalf's "Motion to Dismiss Indictment" ("Motion") (docket no. 15).

## *II. RELEVANT PROCEDURAL BACKGROUND*

On December 15, 2015, the grand jury returned a one-count Indictment (docket no. 2) charging Defendant with committing a hate crime, in violation of 18 U.S.C. § 249(a)(1). On January 14, 2016, Defendant filed the Motion. On January 22, 2016, the government filed a Resistance (docket no. 16). The Motion is fully submitted and ready for decision.

## III. ANALYSIS

In the Motion, Defendant seeks dismissal of the Indictment on the grounds that the charged offense, 18 U.S.C. § 249(a)(1), is an unconstitutional exercise of Congress's power under the Thirteenth Amendment of the United States Constitution. "Defendant's Brief in Support of Motion to Dismiss Indictment" ("Defense Brief") at 1.

Section 249(a)(1) provides:

> Whoever, whether or not acting under color of law, willfully causes bodily injury to any person or, through the use of fire, a firearm, a dangerous weapon, or an explosive or incendiary device, attempts to cause bodily injury to any person, because of the actual or perceived race, color, religion, or national origin of any person [shall be subject to punishment].

18 U.S.C. § 249(a)(1). Section 249(a)(1) "rests solely on Congress's authority under § 2 of the Thirteenth Amendment." *United States v. Cannon*, 750 F.3d 492, 498 (5th Cir. 2014).

Section One of the Thirteenth Amendment abolishes slavery and involuntary servitude within the United States, and Section Two provides that "Congress shall have power to enforce [the Thirteenth Amendment] by appropriate legislation." U.S. Const. amend. XIII. The amendment "clothes Congress with power to pass all laws necessary and proper for abolishing all badges and incidents of slavery in the United States." *The Civil Rights Cases*, 109 U.S. 3, 20 (1883). It is the role of Congress to "rationally . . . determine what are the badges and the incidents of slavery, and . . . to translate that determination into effective legislation." *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 440 (1968). Therefore, under *Jones*, § 249(a)(1) comports with Congress's power under the Thirteenth Amendment if Congress could have rationally determined that violence motivated by "actual or perceived race, color, religion, or national origin" was a badge or incident of slavery.

2

The Eighth Circuit has not directly addressed a Thirteenth Amendment challenge to § 249(a)(1).[1] However, other courts faced with the issue have upheld the law, relying on *Jones* to conclude that Congress rationally determined that racially motivated violence was a badge or incident of slavery. *See Cannon*, 750 F.3d 492; *United States v. Hatch*, 722 F.3d 1193 (10th Cir. 2013); *see also United States v. Henery*, 60 F. Supp. 3d 1126 (D. Idaho 2014).

Defendant argues that these out-of-circuit cases were wrongly decided because *Jones* has been overruled by *City of Boerne v. Flores*, 521 U.S. 507 (1997), *superseded by statute*, Religious Land Use and Institutionalized Persons Act of 2000, Pub. L. No. 106-274, 114 Stat. 803, *as recognized in Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2761-62 (2014) and *Shelby Cty. v. Holder*, 133 S. Ct. 2612 (2013). *See* Defense Brief at 4-5. Defendant contends that, under *City of Boerne* and *Shelby County*, § 249(a)(1) is an unconstitutional exercise of Congress's power under the Thirteenth Amendment. *Id.* at 6. Defendant further argues that § 249(a)(1) is unconstitutional even if *Jones* applies, both because Congress could not rationally determine that racially motivated violence is a badge or incident of slavery and because the statute is contrary to federalism principles. *See id.* at 8-10. The government argues that *Jones* has not been overruled and that § 249(a)(1) comports with the Thirteenth Amendment under the *Jones* framework. "Brief in Support of the Resistance to Defendant's Motion to Dismiss" ("Government Brief") at 7-8.

---

[1] In *United States v. Maybee*, 687 F.3d 1026 (8th Cir. 2012), the Eighth Circuit upheld § 249(a)(1) against a defendant's "single and quite narrow challenge to [its] constitutionality." *Maybee*, 687 F.3d at 1030-31. The defendant argued that § 249(a)(1) was unconstitutional under the Thirteenth Amendment because "the victim's enjoyment of a public benefit" was not a statutory element of the offense. *Id.* at 1031. The Eighth Circuit rejected the defendant's argument, but declined to comment more generally on the statute's constitutionality. *See id.*

### A. Jones v. Alfred H. Mayer Co.

In 1968, the Supreme Court addressed a challenge to 42 U.S.C. § 1982, which guarantees to all citizens "the same right . . . as is enjoyed by white citizens . . . to inherit, purchase, lease, sell, hold, and convey real and personal property." *See Jones*, 392 U.S. at 412. The Court considered whether Congress had the constitutional authority to enact a statute with such scope. *See id.* at 437-44. Central to its analysis were statements by Senator Trumbull, one of the chief proponents of the passage of the Thirteenth Amendment, which he made in support of the Civil Rights Act of 1866:

> I have no doubt that under [the Thirteenth Amendment] we may destroy all these discriminations in civil rights against the black man; and if we cannot, our constitutional amendment amounts to nothing. It was for that purpose that the second clause of that amendment was adopted, which says that Congress shall have authority, by appropriate legislation, to carry into effect the article prohibiting slavery. Who is to decide what that appropriate legislation is to be? The Congress of the United States; and it is for Congress to adopt such appropriate legislation as it may think proper, so that it be a means to accomplish the end.

*Id.* at 440 (quoting Cong. Globe, 39th Cong., 1st Sess., 322) (alterations omitted). The Court concurred with Senator Trumbull's interpretation, stating that "[s]urely Congress has the power under the Thirteenth Amendment rationally to determine what are the badges and the incidents of slavery, and the authority to translate that determination into effective legislation."[2] *Id.* at 440. Because Congress's determination was not "an irrational one,"

---

[2] The Court recognized that a prior case, *Hodge v. United States*, 203 U.S. 1 (1906), had interpreted the scope of the Thirteenth Amendment far more narrowly. *Jones*, 392 U.S. at 441 n.78. However, the Court found that *Hodges* "rested upon a concept of congressional power under the Thirteenth Amendment . . . incompatible with the history and purpose of the [a]mendment itself," and explicitly overruled the case to the extent it stood for a more limited view of Congress's power under the amendment. *Id.*

the Court upheld § 1982 as consistent with Congress's power under the Thirteenth Amendment. *Id.* at 440-41.

Since *Jones*, courts have defined Congress's power under the Thirteenth Amendment using the "rational determination" standard. *See, e.g.*, *Griffin v. Breckenridge*, 403 U.S. 88, 105 (1971) (relying on *Jones* to conclude that Congress acted within its power to enact 42 U.S.C. § 1985); *United States v. Allen*, 341 F.3d 870, 883-84 (9th Cir. 2003) (relying on *Jones* to conclude that Congress acted within its power to enact 18 U.S.C. § 245(b)(2)(B)); *United States v. Nelson*, 277 F.3d 164, 190-91 (2d Cir. 2002) (same); *United States v. Bledsoe*, 728 F.2d 1094, 1097 (8th Cir. 1984) (same).

However, Congress's powers under the enforcement clauses of the other Reconstruction Amendments, the Fourteenth and Fifteenth, are assessed under different standards. In *City of Boerne*, the Supreme Court examined the relevant text, legislative history and case law to conclude that Congress's power to enforce the Fourteenth Amendment is limited to enacting preventative or remedial legislation to ensure against constitutional violations perpetrated by states against their citizens. *See City of Boerne*, 521 U.S. at 517-20. The Fourteenth Amendment enforcement power does not, therefore, provide Congress with the power to decide "what constitutes a constitutional violation." *Id.* at 519. In *Shelby County*, the Court concluded that legislation passed under Congress's Fifteenth Amendment enforcement power must remedy contemporary discrimination, rather than historical discrimination. *See Shelby Cty.*, 133 S. Ct. at 2629 ("The Amendment is not designed to punish for the past; its purpose is to ensure a better future.").

Defendant argues that *City of Boerne* and *Shelby County*, both decided more recently than *Jones*, apply to the Thirteenth Amendment and overrule *Jones*. *See* Defense Brief at 6-7. However, neither of those cases implicated the Thirteenth Amendment in its holding or analysis. On the other hand, *Jones* is a Supreme Court precedent with direct

application to the Thirteenth Amendment and, accordingly, to this case. "If a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the [lower courts] should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989); *see also Northport Health Servs. of Ark., LLC v. Rutherford*, 605 F.3d 483, 490 (8th Cir. 2010) ("The Supreme Court 'does not normally overturn, or so dramatically limit, earlier authority *sub silentio*.'" (quoting *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 18 (2000))). In short, it is not the court's role to conclude that the Supreme Court has implicitly overruled itself, and the court will not do so. Whether or not *City of Boerne* and *Shelby County* have created "a growing tension" among interpretations of the three Reconstruction Amendments, *see Cannon*, 750 F.3d at 509 (Elrod, J., concurring), *Jones* continues to be binding precedent, absent a contrary directive from the Supreme Court. *Accord Cannon*, 750 F.3d at 505; *Hatch*, 722 F.3d at 1205; *Henery*, 60 F. Supp. 3d at 1131.

### *B. Rational Determination Analysis*

The court turns now to an assessment of Congress's determination that racially motivated violence is a badge or incident of slavery and thereby subject to regulation under the Thirteenth Amendment.

Defendant argues that "the focus of the Amendment, beyond ending slavery and involuntary servitude, was economic rights of former slaves." Defense Brief at 8. Because § 249(a)(1) does not relate to economic rights, Defendant argues that it does not implicate any badge or incident of slavery. *Id.* Defendant's view is unavailing. The Amendment's focus is both the badges *and* incidents of slavery. Incidents of slavery refer "to the legal restrictions placed on slaves," such as the inability to own property or enter into contracts. *See Hatch*, 722 F.3d at 1198. Defendant's view that the Thirteenth

6

Amendment focuses on "economic rights" appears to contemplate only these incidents of slavery. However, badges of slavery can reach beyond purely legal restrictions to encompass "the psychological scars that slavery inflicted upon slaves" and the subjugation of slaves to a lesser status—including "widespread private violence and discrimination, disparate enforcement of racially neutral laws, and eventually, Jim Crow laws." *Id.* (quoting Jennifer Mason McAward, *Defining the Badges and Incidents of Slavery*, 14 U. Pa. J. Const. L. 561, 581 (2012)) (alteration omitted).

Consistent with the traditional definitions of badges and incidents of slavery, Congress justified its enactment of § 249(a)(1) on various grounds, including the following:

> For generations, the institutions of slavery and involuntary servitude were defined by the race, color, and ancestry of those held in bondage. Slavery and involuntary servitude were enforced, both prior to and after the adoption of the 13th [A]mendment to the Constitution of the United States, through widespread public and private violence directed at persons because of their race, color, or ancestry, or perceived race, color, or ancestry. Accordingly, eliminating racially motivated violence is an important means of eliminating, to the extent possible, the badges, incidents, and relics of slavery and involuntary servitude.

Matthew Shepard & James Byrd, Jr. Hate Crimes Prevention Act, Pub. L. No. 111-84, 123 Stat. 2836 (2009), § 4702(7).[3]

---

[3] Congress did not support the statute solely on historical grounds. Congress also found that racially motivated violence "poses a serious national problem," 123 Stat. 2835, § 4702(1), and that "[e]xisting [f]ederal law is inadequate to address this problem," *id.* § 4702(4). However, as the court concluded above, *Shelby County* does not apply to the instant case and the constitutionality of the statutory scheme does not turn on Congress's findings of contemporary discrimination. Therefore, the court takes no position as to whether these findings alone would render § 249(a)(1) constitutional under an alternative interpretation of the Thirteenth Amendment.

Congress's findings are supported by historical accounts, which identify threatened and actual violence as vital components of the institution of slavery. *See Hatch*, 722 F.3d at 1206 (recognizing that "unrestrained master-on-slave violence [was] one of slavery's most necessary features" and "operate[d] to produce a slave's necessary obedience" (quoting *State v. Mann*, 13 N.C. (2 Dev.) 263, 1829 WL 252, at *2-3) (internal quotation marks omitted)); *see also id.* (compiling various sources linking violence to the institution of slavery). Therefore, Congress rationally determined that racially motivated violence, as contemplated by § 249(a)(1), is a badge of slavery.

Defendant argues that, even if the Thirteenth Amendment permits Congress to regulate violence as a badge of slavery, § 249(a)(1) exceeds the scope of the Amendment because the statute is not limited to protecting African-Americans. *See* Defense Brief at 8. It is true that § 249(a)(1) regulates acts of violence taken against a person because of real or perceived "race, color, religion, or national origin"—without reference to any particular race. *See* 18 U.S.C. § 249(a)(1). However, each identity characteristic encompassed by § 249(a)(1) fits within the understanding of "race" at the time of the Thirteenth Amendment's passage. *See, e.g.*, 123 Stat. 2836, § 4702(8) ("Both at the time when the 13th, 14th, and 15th [A]mendments to the Constitution of the United States were adopted, and continuing to date, members of certain religious and national origin groups were and are perceived to be distinct 'races.'"); *Hatch*, 722 F.3d at 1205 (citing *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987); *Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 617-18 (1987)). As such, targeting a victim because of any characteristic enumerated in § 249(a)(1) creates a race-based power dynamic of aggressor and victim, and Congress could rationally determine that such an effect is a badge of slavery in light of the connection between racial animus and the institution of slavery. Nothing about Congress's decision to extend protection to all races makes its determination regarding badges of slavery any less rational. Therefore, Congress rationally determined

that racially motivated violence, irrespective of the particular races involved, is a badge of slavery. Accordingly, Congress's enactment of § 249(a)(1) comports with its power under the Thirteenth Amendment.

### C. Tenth Amendment

Defendant argues that § 249(a)(1) interferes with the police powers traditionally reserved to the states under the Tenth Amendment of the United States Constitution. *See* Defense Motion at 9-10.

The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. The Tenth Amendment does not independently impose limits on the federal government, but instead "confirms" preexisting federalism principles. *New York v. United States*, 505 U.S. 144, 156-57 (1992). Federalism demands that, while "[t]he States have broad authority to enact legislation for the public good—what [is] often called a 'police power,'" the federal government "can exercise only the powers granted to it." *Bond v. United States* (*Bond II*), 134 S. Ct. 2077, 2086 (2014) (quoting *McCulloch v. Maryland*, 4 Wheat. 316, 405, 4 L. Ed. 579 (1819)). A party may, in a proper case, "challenge a law as enacted in contravention of constitutional principles of federalism." *Bond v. United States* (*Bond I*), 564 U.S. 211, 131 S. Ct. 2355, 2365 (2011). However, "a Tenth Amendment challenge to a statute 'necessarily' fails if the statute is a valid exercise of a power relegated to Congress." *United States v. Louper-Morris*, 672 F.3d 539, 563 (8th Cir. 2012) (quoting *United States v. Wright*, 128 F.3d 1274, 1276 (8th Cir. 1997)).

The Thirteenth Amendment explicitly delegates to Congress the "power to enforce [the abolition of slavery and involuntary servitude] by appropriate legislation." U.S. Const. amend. XIII, § 2. As the court discussed above, Congress's enactment of § 249(a)(1) comported with this power. Therefore, because the Constitution granted

9

Congress the power to enact § 249(a)(1), the statute does not improperly intrude on the state police power and comports with the Tenth Amendment.

## IV. CONCLUSION

For the foregoing reasons, Defendant Randy Joe Metcalf's "Motion to Dismiss Indictment" (docket no. 15) is **DENIED**.

**IT IS SO ORDERED.**

**DATED** this 2nd day of March, 2016.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA