**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | |
| Plaintiff, | | No. 15-CR-1032-LRR |
| vs. | | **ORDER** |
| RANDY JOE METCALF, | | |
| Defendant. | | |

_____

*TABLE OF CONTENTS*

*I.*     *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

*II.*    *RELEVANT PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . *1*

*III.*   *RELEVANT TRIAL EVIDENCE* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*IV.*   *MOTION FOR JUDGMENT OF ACQUITTAL* . . . . . . . . . . . . . . . . . . . *4*

      *A.*     *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
      *B.*     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*

*V.*     *MOTION FOR NEW TRIAL* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *9*

      *A.*     *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *9*
      *B.*     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *10*

*VI.*   *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *10*

## I. INTRODUCTION

The matter before the court is Defendant Randy Joe Metcalf's "Motion for Judgment of Acquittal and for New Trial" ("Motion") (docket no. 105).

## II. RELEVANT PROCEDURAL BACKGROUND

On December 15, 2015, a grand jury returned an Indictment (docket no. 2) charging Defendant with a hate crime in violation of 18 U.S.C. § 249(a)(1).

On March 28, 2016, a jury trial commenced. *See* March 28, 2016 Minute Entry (docket no. 94). On March 29, 2016, Defendant moved for a judgment of acquittal at the

close of the government's evidence and renewed the motion at the close of all evidence. *See* March 29, 2016 Minute Entry (docket no. 95). The court denied the motion. *See id.* On March 30, 2016, the jury returned a verdict finding Defendant guilty of the crime alleged in the Indictment. *See* Jury Verdict (docket no. 100).

On April 13, 2016, Defendant filed the Motion. On April 19, 2016, the government filed a Resistance (docket no. 108). The Motion is fully submitted and ready for decision.

### III. RELEVANT TRIAL EVIDENCE

Viewed in the light most favorable to the verdict, the evidence at trial was as follows. On January 11, 2015, and into the early morning of January 12, Defendant was socializing with his then-fiancee Noelle Weyker and two men, Jeremy and Joseph Sanders, at the Northside Bar in Dubuque, Iowa. The victim, Lamarr Sandridge, was also at the bar with his friends Sarah Kiene and Katie Flores. Sandridge is an African-American man and Kiene and Flores are Caucasian women. Sandridge was the only African-American person in the bar that evening. Each person in Defendant's and Sandridge's groups drank alcohol while at the bar.

At some point in the evening, Weyker got into a dispute with Kiene and Flores involving the use of the bar's jukebox. During the dispute, Defendant confronted Kiene and Flores and directed expletives at them, including calling them "nigger-loving whores." After hearing the expletives, Sandridge intervened in the confrontation and exchanged words with Defendant. With the assistance of the bar owner, Ted Stackis, and the bartender, Becky Burks, the dispute concluded and Defendant and Sandridge shook hands.

After this initial confrontation with Sandridge, Defendant retreated with Stackis to the back of the bar. Defendant had a lengthy conversation with Stackis, during which Defendant lifted up his shirt to show Stackis a large swastika tattooed on Defendant's abdomen. Stackis testified that, during his conversation with Defendant, Defendant made

derogatory comments about African-Americans, including "I hate fucking niggers," asked Stackis if there were any people he wanted Defendant "to take care of" and told Stackis that he had participated in cross burnings many years ago. After his conversation with Stackis, Defendant returned to the main bar and continued socializing with Weyker and the Sanderses. He again lifted his shirt to show his friends the swastika tattoo. According to Joseph Sanders, while revealing his swastika tattoo, Defendant stated "this is what I'm all about."

As the evening continued, Kiene and Flores overheard Defendant using racial slurs to refer to Sandridge, Kiene and Flores, including such phrases as "dirty nigger" and "nigger-loving cunts." After hearing Defendant use racial slurs for over an hour, Kiene and Flores confronted him. Kiene and Flores became animated during their confrontation with Defendant, and Sandridge attempted to de-escalate the situation. Weyker used her cell phone to video-record Kiene and Flores as they shouted at Defendant. Flores noticed Weyker video-recording them, approached Weyker and hit the cell phone out of her hand. Defendant saw Flores hit the cell phone out of Weyker's hand, ran at Flores, grabbed her by the hair and pulled her to the ground. Sandridge attempted to physically restrain Defendant and pull him away from Flores. Jeremy Sanders placed Sandridge into a headlock, and he and Joseph Sanders repeatedly struck Sandridge in the head with closed fists, causing Sandridge to crumple to the floor in a daze. While Sandridge was on the floor, Defendant left Flores, walked over to Sandridge and kicked and stomped on Sandridge's head until he lay motionless. During the fight, Burks heard Defendant and the Sanderses say things including "fucking nigger" and "die nigger."

Burks was able to remove Defendant from Sandridge and break up the fight. Burks then dialed "911" from the bar's telephone. While Burks was on the telephone, Defendant, Weyker and the Sanderses took their coats and appeared to head toward the exit. Before leaving, however, Defendant again walked to where Sandridge lay motionless

on the ground and again kicked and stomped Sandridge's head. Kiene then shoved Defendant away from Sandridge, and Defendant struck Kiene and knocked her to the ground. Defendant then left the bar with the Sanderses and Weyker, although Weyker returned to the bar shortly thereafter. The entire series of events at the bar was captured on surveillance video, albeit without audio.

Jeremy Sanders testified that, after leaving the bar, he, Defendant and Joseph Sanders returned to Jeremy Sanders's apartment. According to Jeremy Sanders, at the apartment Defendant referred to Sandridge as a "nigger" and stated that he "got what he had coming to him." Further government evidence showed that Sandridge was treated at the emergency room and sustained serious facial injuries and a loss of memory from the time of the jukebox dispute until he woke up in the hospital. Further evidence also showed that Defendant had a second tattoo featuring a swastika and that Defendant modified the swastika tattoo on his abdomen to cover up the swastika at some time after the assault. Certain defense witnesses testified to their opinion that Jeremy Sanders had a character for untruthfulness. Numerous other defense witnesses testified regarding their opinion, and to specific acts informing their opinion, that Defendant had a character for not being racist.

## IV.  MOTION FOR JUDGMENT OF ACQUITTAL

### A.  Legal Standard

Federal Rule of Criminal Procedure 29 provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Such a motion is permitted after trial, in which case the court may set aside the verdict and enter a judgment of acquittal. *See* Fed. R. Crim. P. 29(c). It is well settled that jury verdicts are not lightly overturned. *See, e.g.*, *United States v. Peneaux*, 432 F.3d 882, 890 (8th Cir. 2005); *United States v. Stroh*, 176 F.3d 439, 440 (8th Cir. 1999). The court must view the evidence in the light most favorable to the government and give the government the benefit

of all reasonable inferences. *See United States v. Peters*, 462 F.3d 953, 957 (8th Cir. 2006). The court must uphold the jury's verdict so long as a reasonable-minded jury could have found the defendant guilty beyond a reasonable doubt. *Id.* Moreover, the court "must uphold the jury's verdict even where the evidence 'rationally supports two conflicting hypotheses' of guilt and innocence." *Id.* (quoting *United States v. Serrano-Lopez*, 366 F.3d 628, 634 (8th Cir. 2004)). It is not the province of the court to evaluate the credibility of witnesses—that task is for the jury. *United States v. Hayes*, 391 F.3d 958, 961 (8th Cir. 2004).

### *B. Analysis*

Defendant argues that the court should enter a judgment of acquittal because there was insufficient evidence to support the jury's verdict. Motion at 2-5. More specifically, Defendant argues that the evidence was insufficient to prove that Defendant assaulted Sandridge because of his actual or perceived race. *Id.* at 5.

To convict Defendant of committing a hate crime, the government was required to prove (1) that Defendant willfully caused bodily injury to Sandridge and (2) that Defendant did so because of Sandridge's actual or perceived race. *See, e.g.*, Final Jury Instructions (docket no. 99) at 15; 18 U.S.C. § 249(a)(1); *see also United States v. Cannon*, 750 F.3d 492, 505 (5th Cir. 2014) (listing the elements as "(1) willfully cause or attempt to cause; (2) bodily injury to any person; (3) because of their actual or perceived race or color"). Defendant's challenge to the sufficiency of the evidence relates to the second element—whether Defendant acted "because of" Sandridge's race. Motion at 5. The "because of" element of § 249(a)(1) requires proof that the victim's actual or perceived race was the but-for cause of the defendant's willful assault of the victim. *See United States v. Miller*, 767 F.3d 585, 592 (6th Cir. 2014). In other words, a defendant willfully causes bodily injury to a person "because of" that person's actual or perceived race "when the person's actual or perceived [race] was 'the reason' the defendant decided to act—that

is, 'the straw that broke the camel's back.'" *Id.* (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009); *Burrage v. United States*, __ U.S. __, __, 134 S. Ct. 881, 888 (2014)) (internal citations and quotation marks omitted).

Defendant's challenges to the sufficiency of the evidence fall into two categories. First, that certain testimony from Burks, Stackis and the Sanderses lacked credibility for various reasons. Motion at 3-5. Second, that certain testimony from Burks and Stackis failed to show that Defendant directed racial slurs at Sandridge specifically. *Id.* at 3-4.

Defendant challenges Burks's credibility by emphasizing that Burks denied drinking alcohol on her shift, contradicting the surveillance video, and that she did not mention any racial motivation for the assault in her "911" call or statements to the police. *Id.* at 3-4. Defendant challenges Stackis's credibility by emphasizing that "[h]e was drinking alcohol and smoking marijuana" and that he did not ask Defendant to leave after Defendant made racist comments. *Id.* at 4. Defendant challenges the Sanderses' credibility by emphasizing purported inconsistencies between their initial statements regarding the relevant events and their eventual grand jury and trial testimony. *Id.* at 4-5. Defendant also points out that, based on their involvement in the assault, the Sanderses were each initially charged with felony assault but ultimately pled guilty to misdemeanor assault, which Defendant insinuates was the result of their cooperation in the investigation against Defendant. *Id.* Defendant argues that the Sanderses should have been treated as accomplices to the crime and that the jury should have been instructed on how to assess their credibility as such. *Id.* at 5.

As a general matter, Defendant's attacks on these witnesses' credibility cannot undermine the sufficiency of the evidence, because "the jury is the final arbiter of the witnesses' credibility." *United States v. Corrales-Portillo*, 779 F.3d 823, 832 (8th Cir. 2015) (alteration omitted) (quoting *United States v. Listman*, 636 F.3d 425, 430 (8th Cir. 2011)). Therefore, any questions Defendant raises about these witnesses' testimony must

be resolved "in favor of the verdict." *Id.* (quoting *United States v. Ali*, 616 F.3d 745, 755 (8th Cir. 2010)). The court further notes that it instructed the jury as to how it may assess a witness's credibility, *see* Final Jury Instructions at 7, and how a witness's credibility may be impeached, *see* Final Jury Instructions at 8. From those instructions, the jury was equipped to make its own credibility determinations and is presumed to have done so when reaching its verdict. *See United States v. Myers*, 503 F.3d 676, 683 (8th Cir. 2007) ("A jury is presumed to follow its instructions." (quoting *Weeks v. Angelone*, 528 U.S. 225, 234 (2000))). Further, because the instructions provided to the jury informed the jury of its ability to consider "any motives [a] witness may have for testifying a certain way," *see* Final Instructions at 7, the court finds no merit in Defendant's argument that the omission of Defendant's proposed accomplice instruction undermines the sufficiency of the evidence or the jury's verdict. *See* Joint Proposed Jury Instructions (docket no. 85) at 32 (proposed accomplice instruction informing the jury that "[w]hether or not [the Sanderses] testimony may have been influenced by their desire to please the government or to strike a good bargain with the government about their own situation is for you to determine"). Accordingly, the court finds that the purported credibility issues do not reflect insufficient evidence.

Defendant also argues that testimony from Burks and Stackis failed to establish that Defendant used racial slurs while assaulting Sandridge or that Defendant explicitly directed racial slurs at Sandridge. *See* Motion at 3, 4. However, Defendant's argument rests on two false premises: first, that to assault a person "because of" his race requires that a defendant vocalize or signal his racist attitudes during the assault itself; and second, that to assault a person "because of" his race requires that a defendant overtly direct racial slurs at the person. Proving that Defendant acted "because of" Sandridge's race does not require such direct evidence of Defendant's motivation. *See NLRB v. RELCO Locomotives, Inc.*, 734 F.3d 764, 780 (8th Cir. 2013) ("Motivation 'is a question of fact

that may be inferred from both direct and circumstantial evidence.'" (quoting *Concepts & Designs v. NLRB*, 101 F.3d 1243, 1245 (8th Cir. 1996))). "Direct evidence of a defendant's mental state frequently is unavailable and the jury 'is entitled to scrutinize and make reasonable inferences from [D]efendant's conduct and from all facts surrounding the incident in question.'" *Peters*, 462 F.3d at 957 (citation omitted) (quoting *United States v. Pitts*, 508 F.2d 1237, 1240 (8th Cir. 1974)).

Here, even if there was no direct evidence of Defendant's motivation in the form of his use of racial slurs during the assault[1] or his targeting of racial slurs explicitly at Sandridge, the facts surrounding the assault would allow a reasonable-minded jury to find that Defendant acted "because of" Sandridge's race. First, numerous witnesses at the bar testified to hearing Defendant use variations on the word "nigger" regularly throughout the evening. Second, even if Defendant did not explicitly direct slurs at Sandridge, witnesses testified that he was the only African-American person in the bar. Third, Defendant told Stackis that he "hated fucking niggers" and showed off his swastika tattoo promptly after getting into a dispute with Sandridge and his friends. Fourth, despite Defendant entering the fight after Flores hit the phone out of Weyker's hand, his assault on Sandridge occurred only after that initial fight had concluded, rebutting the defense theory that Defendant's assault on Sandridge was motivated by the fight involving the phone. Combined, these observations reasonably support the conclusion that Defendant assaulted Sandridge "because of" Sandridge's race. Accordingly, the court finds that

---

[1] Burks's testimony was ambiguous as to whether she specifically heard Defendant use racial slurs during the assault or whether she generally heard racial slurs during the assault without recognizing who used them. On direct examination, Burks testified that she heard Defendant use racial slurs during the assault but, on cross examination, she testified that she heard Defendant and Jeremy and Joseph Sanders all use racial slurs during the assault.

sufficient evidence supported the jury's verdict and the court shall deny the Motion to the extent it seeks a judgment of acquittal.

## V.  MOTION FOR NEW TRIAL

### A.  Legal Standard

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). A district court is granted broad discretion in considering a motion for a new trial. *See Peters*, 462 F.3d at 957. A district court may "weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002) (quoting *White v. Pence*, 961 F.2d 776, 780 (8th Cir. 1992)). However, the court "should grant a new trial only if 'the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred.'" *Peters*, 462 F.3d at 957 (quoting *United States v. Rodriguez*, 812 F.2d 414, 417 (8th Cir. 1987)).

A district court enjoys more latitude in granting new trials under Rule 33 than in granting motions for judgment of acquittal under Rule 29; however, "[m]otions for new trials based on the weight of the evidence are generally disfavored." *Campos*, 306 F.3d at 579. District courts "must exercise the Rule 33 authority 'sparingly and with caution.'" *Id.* (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)). The court's standard of review for a motion for new trial differs from the standard that is applied to a motion for judgment of acquittal.

> When a motion for new trial is made on the ground that the verdict is contrary to the weight of the evidence, the issues are far different from those raised by a motion for judgment of acquittal. The question is not whether the defendant should be acquitted outright, but only whether he should have a new trial. The district court need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses.

> If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury.

*Lincoln*, 630 F.2d at 1319; *see also United States v. Johnson*, 474 F.3d 1044, 1051 (8th Cir. 2007) (reiterating applicable standard).

### B. Analysis

Defendant provides no additional argument for why the court should grant a new trial, but instead further relies on the sufficiency-of-the-evidence argument addressed above. The court has concluded that the government presented sufficient evidence at trial, and further concludes that the evidence did not "preponderate[] sufficiently heavily against the verdict" to warrant a new trial. *Lincoln*, 630 F.2d at 1319. No miscarriage of justice occurred. Accordingly, the court shall deny the Motion to the extent it seeks a new trial.

### VI. CONCLUSION

In light of the foregoing, the Motion (docket no. 105) is **DENIED**.

**IT IS SO ORDERED.**

**DATED** this 20th day of April, 2016.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA